**BRUKER INSTRUMENTS, INC., Plaintiff,**

v.

**BAY STATE MOVING SYSTEMS, INC., Defendant.**

**Civil Action No. 96–40189–CBS.**

United States District Court, D. Massachusetts.

July 29, 1998.

MEMORANDUM AND ORDER

SWARTWOOD, United States Magistrate Judge.

## Nature of the Case

The Plaintiff, Bruker Instruments, Inc. ("Bruker" or "Plaintiff"), seeks to recover against Bay State Moving Systems, Inc. ("Bay State") and/or United Van Lines, Inc. ("United")[1] (collectively "Defendants"), for damage to a spectrometer during shipment by Defendants from Bruker's Billerica, Massachusetts facility to its Houston, Texas facility. This case is controlled by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.[2]

## Nature of the Proceeding

This Memorandum and Order addresses the following motions:

1. Defendant's Motion for Summary Judgment (Docket No. 17); and

2. Plaintiff's Motion to Amend Complaint (Docket No. 22).

## Standard of Review

### a. Motion for Summary Judgment

To prevail on a motion for summary judgment, the moving party must establish the non-existence of any genuine issue of fact material to a judgment in its favor. *Snow v. Harnischfeger Corp.*, 12 F.3d 1154, 1157 (1st Cir.1993); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[t]he mere existence

David A. White, Dolbec, McGrath, Crowley & white, Boston, MA, for Plaintiff.

Wesley S. Chused, Looney & Grossman, Boston, MA, for Defendant.

1. Bruker's original Complaint and First Amended Complaint seek to recover against Bay State, but Bruker has filed a motion to further amend its complaint by adding an identical count for recovery against United. For purposes of Bay State's motion for summary judgment, I will consider whether or not Bruker has a claim against either Bay State or United.

2. The shipment in this case occurred on September 7, 1994. On December 29, 1995, 49 U.S.C. § 14706 was amended by the I.C.C. Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 907. The amendment essentially moved, without substantive modification, the provisions relevant to motor common carrier liability from 49 U.S.C. §§ 11707 and 10730 to § 14706. The effective date of the Act was January 1, 1996. A court must apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary. *Bradley v. Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). As the change in law has no effect on the substantive rights of the parties in this case, it is appropriate to apply the present law. *See, Landgraf v. USI Film Products*, 511 U.S. 244, 268–269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)(absent clear Congressional intention to contrary, retroactive application of legislation is disfavored only when statute has "retroactive effect"—changing rights of parties and upsetting settled expectations of state of law).

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of underlying material fact."). In deciding a summary judgment motion, I am obligated to view the facts and any reasonable inferences drawn from them in a light most favorable to the non-moving party. *Snow* 12 F.3d at 1157.

### b. *Motion to Amend*

Pursuant to Fed.R.Civ.P. 15(a), once a defendant's answer is served, plaintiff's complaint may be amended only by leave of court and "leave shall be freely given when justice so requires". However, " '[w]hile motions to amend are liberally granted, a court has the discretion to deny them if it believes that, as a matter of law, amendment would be futile.' " *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 792 (1st Cir.1995) (citation to quoted case and internal citations omitted)(alteration in cited case).

### *Facts*

The following facts are uncontroverted, or are stated in a light most favorable to Bruker:

1. On September 7, 1994, Bruker's agent, R. Osborne, signed a shipping order for delivery of a spectrometer from Bruker's facility in Billerica, Massachusetts to its facility in Houston, Texas. On this shipping order, the carrier was identified as "Bay State/United". Additionally, the shipping order signed by Bruker contained the following relevant certification:

> shipper hereby certifies that he is familiar with all terms and conditions of the ... bill of lading including those ... set forth in the classification or tariff which governs the transportation of this shipment, and the said terms are hereby agreed to by the shipper and accepted for himself and his assigns.

*Aff. Of Paul Ruppert* (Docket No. 20)("*Ruppert Aff.*"), at *Ex. 1.*

2. At the time of shipment, a uniform bill of lading was issued on a United form which showed Bay State as the shipper and contained the following relevant contract term and condition:

> SECTION 6: As a condition precedent to recovery, a claim for a loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, ...; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier will not be liable and such claims will not be paid.

*Id.* at *Ex. 2.*

3. As an interstate carrier, United was required to and did file a tariff which, in relevant part, governs the filing, investigation and disposition of freight claims as follows:

### CLAIMS, LOSS AND DAMAGE

ITEM 19

. . . .

> (b) *Minimum Filing Requirements:* A communication in writing from a claimant filed with carrier within the time limits specified in the bill of lading or contract of carriage or transportation, and (i) containing facts sufficient to identify the shipment (or shipments) of property involved, (ii) asserting liability for alleged loss, damage, injury or delay, and (iii) making claim for the payment of a specified or determinable amount of money, will be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

*Aff. Of Grace M. Mitchell* (Docket No. 19), at *Ex. 1.*

4. On September 13, 1994, the spectrometer was delivered to Bruker's facility in Houston, Texas. By letter dated December 8, 1994, Bruker notified Bay State that the spectrometer had been damaged during shipment. There was attached to that letter a

signed United form for Presentation Of Claim For Loss And Damage.

5. The December 8, 1994 letter contained the following relevant statements:

. . . .

> This letter is to provide formal written notice that Bruker Instruments hold United Van Lines, Inc. and Bay State Moving Systems, Inc. completely responsible for the damages incurred during the subject shipment, and that we expect full restitution for the damages.

. . . .

> We will not know the full extent of the damages until the unit is opened for repair at the manufacturer's facility in Switzerland, but the cost for replacement, and the associated freight and other examination costs, could exceed $75,000.

*Ruppert Aff.*, at *Ex. 4.*

6. The United claim form signed by Robert Osborne on behalf of Bruker which accompanied the December 8, 1994 letter contained the following statement at the bottom of the form:

> Extent of damage is still under investigation. Repair estimate will be available once examination is completed.

*Id.*

7. By letter date January 23, 1995, Paul Ruppert, United's claims adjuster, notified Mr. Osborne of Bruker in writing that United denied Bruker's claim for damage to the spectrometer resulting from its shipment from Billerica to Houston. *Ex. AA* to *Pl's Opp.*(Docket No. 23), at *Ex. AA.*

8. Shortly after Bruker received United's denial of claim, Kenneth Fortier, Vice President of Sales for Bay State, offered to settle Bruker's damage claim for $4,000, but stated that Bay State would wait for United to make its determination before Bay State issued the check for the settlement amount. *Pl's Opp.* (Docket No. 23), at *Ex. C. See also Id.* at *Ex. B* (James Russo's Aff.).

9. On March 10, 1995, Bruker received an estimate from its Swiss subsidiary that the cost to repair the spectrometer was $16,-116.74. Robert Osgood acknowledged receiving that estimate, but he did not send it to United or Bay State. *Bay State's Mem. In Sup. of Sum. J.* (Docket No. 18)(Osborne Depos.), at p. 100 and *Ex. 6.*

10. The nine-month period from delivery of the spectrometer to Bruker's Houston facility on September 13, 1994 expired on June 13, 1995 and during that period, Bruker sent no further information to Defendants concerning its claim for damage to the spectrometer.

#### c. *Discussion*

█ The Carmack Amendment states that a carrier "may not provide by rule, contract, or otherwise, a period of less than nine (9) months for filing a claim against it under this section . . ." 49 U.S.C. § 14706(e)(1). This section does not establish a statute of limitations for the filing of claims, rather it prevents a carrier from providing for a shorter filing period in its bill of lading. *Dress Barn, Inc. v. LTA Group, Inc.*, 822 F.Supp. 88, 90 (1993); *State Farm Fire & Cas. Co. v. United Van Lines, Inc.*, 825 F.Supp. 896, 901 (N.D.Cal.1993). However, when a carrier issues a bill of lading which contains a provision requiring that all claims be filed within nine months of the date of loss, a shipper is barred from recovery on any claim which is not filed in that time period. *Nedlloyd Lines v. Harris Transport*, 922 F.2d 905, 907 (1st Cir.1991).

Regulations governing the processing of claims for damage to property transported in inter state commerce are set forth in 49 C.F.R. § 1005.1, *et seq.* The regulations provide that a carrier *shall not* voluntarily pay a claim for damage to cargo unless within the time limits specified in the bill of lading, the claimant files a written claim with such carrier: "(1) Containing facts sufficient to identify the . . . shipment . . ., (2) asserting liability for alleged . . . damage . . ., and (3) making claim for the payment of a specified or determinable amount of money . . .". 49 C.F.R. §§ 1005.2(a), (b). · Furthermore, the regulations provide, in relevant part, that:

> Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$100 more or less," the carrier against whom such claim is filed shall determine the condition of the . . . shipment

involved at the time of delivery by it, if it was delivered, and shall ascertain as nearly as possible the extent, if any, of the ... damage for which it may be responsible. *It shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed ....*

49 C.F.R. § 1005.2(d)(emphasis added).

i. *Whether Bruker Filed a Valid Notice of Claim Within the Nine Month Filing Period.*

■ The bill of lading given to Bruker at the time that Bay State /United took possession of the spectrometer clearly provided that a claim for damage to shipped goods must be made within nine months of receipt of those goods. Bruker maintains that its letter to Bay State on December 8, 1994 is notice of its claim of damage to the spectrometer and is certainly within nine months from receipt of the shipped spectrometer by Bruker at its Houston facility. However, Bay State argues that Bruker's claim was inadequate as it failed to specify the amount of damage as required by its tariff which provides an item 19(b)(minimum filing requirements) that a claim be in writing, contain facts sufficient to identify the shipment of the property involved, assert liability for a loss for alleged damage and make claim for a specified or determinable amount of money. *See also* 49 C.F.R. § 1005.2(b).

Bruker did file a claim with the Defendants within the specified time that sufficiently identified the shipment of the property involved and asserted liability for an alleged loss. However, Bruker's December 8, 1994 letter stated specifically that it "will not know the full extent of the damages until the unit is opened for repair at the manufacturer's facility in Switzerland, but the costs for replacement and the associated freight and other examination costs, could exceed $75,000." *Rupert Aff.* at *Ex. 4.* The claim form attached to that letter also contained at the bottom the following language: "Extent of damages still under investigation. Repair estimate will be available once examination is completed." *Id.* Federal courts are split as to whether a

claim which contains an estimate of the amount of damage to the shipper's property satisfies minimum filing requirements. "Strict compliance jurisdictions" take the position that an estimate is not specific enough to meet minimum filing requirements, while "substantial compliance jurisdictions" hold that an estimate is sufficient. *See Landess v. North American Van Lines, Inc.,* 977 F.Supp. 1274 (E.D.Tex.1997) and cases cited therein. The First Circuit has consistently been characterized as a "strict compliance jurisdiction". *Id.* at 1281 (citing *Nedlloyd Lines v. Harris Transport,* 922 F.2d 905 (1st Cir.1991)). *See also Insurance Co. of N. Am. v. G.I. Trucking,* 1 F.3d 903 (9th Cir.1993); *Salzstein v. Bekins Van Lines Inc.,* 993 F.2d 1187 (5th Cir. 1993)(First Circuit requires strict compliance with filing requirements); *Adelman v. Hub City Los Angeles Terminal, Inc.,* 856 F.Supp. 1544 (N.D.Ala.1994).

Under these circumstances, I find that Bruker's December 8, 1994 letter which did not contain a claim for a specified or determinable amount of money did not meet minimum filing requirements and therefore, did not constitute a "notice of claim" for purposes of tolling the nine-month filing period. *Nedlloyd,* 922 F.2d at 908 ("Permitting an inadequate claim to toll the statute of limitations for the filing of suit would frustrate the regulatory purpose of encouraging voluntary settlement by allowing a shipper to bring an action against the carrier without first providing the carrier the opportunity to pay voluntarily a properly notified claim"). I will now address Bruker's argument that as a result of the Defendants' conduct, it is excused from complying with the nine-month filing requirement.

ii. *Whether Bruker Should Be Excused From Filing A Notice of Claim Within The Claim Period.*

■ There are two situations where failure to file a completed claim within the specified time limit might be excused. *Nedlloyd,* 922 F.2d at 909 (citing *Pathway Bellows v. Blanchette,* 630 F.2d 900, 905, n. 10 (2nd Cir.1980)). "First, failure to file a timely claim might be excused if the shipper was

unable, despite the exercise of reasonable diligence, to ascertain the extent of its loss within the claim filing period." *Id.* This exception does not apply since Bruker knew the cost of repair to the spectrometer in March 1995 which is well within the nine-month specified time limit. "A second exception may apply where conduct on the part of the carrier misled the shipper into believing that the filing of a timely written claim was unnecessary." *Id.* Bruker asserts that this exception applies because Bay State's offer to settle Bruker's claim for $4,000 misled Bruker into thinking that Bay State had acknowledged it had filed a valid claim and therefore, that it would not be necessary for Bruker to supplement its December 8, 1994 letter once it determined the amount of its actual damages. Bruker argues that as a result of Bay State's conduct, this Court should find either that the Defendants have waived Bruker's compliance with the nine-month filing period, or that the Defendants are collaterally estopped from asserting Bruker's failure to comply with the nine-month filing requirement as a defense to its claim. For the reasons set forth below, I disagree.

> Waiver involves the voluntary or intentional surrender of a known right. Estoppel, on the other hand, arises when one party has reasonably relied on the conduct or statements of another; if the relying party suffers harm as a result of this reliance, the inducing party can be estopped from disavowing his earlier conduct or statement.

*Salzstein v. Bekins Van Lines, Inc.,* 993 F.2d 1187, 1191 (5th Cir.1993)(internal citation omitted). Thus, "[w]here conduct of the carrier misleads the shipper into believing that a timely filing of a claim of loss is unnecessary, the carrier will be estopped from invoking the nine-month period as a defense". *L & S Bearing Co. v. Randex Int'l,* 913 F.Supp. 1544, 1547 (S.D.Fla.1995). However, "Estoppel is not to be found lightly ... Estoppel cannot be invoked absent evidence that the carrier told the shipper not to file or otherwise led it to believe that filing was unnecessary to have its claim satisfied." *Imperial News Co., Inc. v. P–I–E Nationwide, Inc.,* 905 F.2d 641 (2d Cir.1990)

On January 23, 1995, United informed Bruker in writing that it was denying Bruker's claim on the grounds that its investigation did not show that the spectrometer had been damaged during shipment. Shortly after Bruker received United's letter, Kenneth Fortier, a representative of Bay State, told Bruker that Bay State expected to have to cover part of the claim because they may have mishandled the delivery. However, Mr. Fortier told Bruker that Bay State would not issue Bruker a check for $4,000 to cover its potential liability until United made a determination.

When a claim for an uncertain amount is filed against a carrier, the carrier has a duty to investigate such a claim and attempt to determine its potential liability. However, until it receives notice of the actual amount of damages, the carrier cannot voluntarily settle the claim. *See* 49 C.F.R. § 1.005.2(d). Bay State's offer of settlement was conditioned on United's determination. United informed Bruker that it had investigated Bruker's claim and found no liability. I find that Defendants' actions constituted nothing more than their attempt to ascertain their potential liability. As such, Bay State's offer to settle and United's denial of Bay State's claim do not constitute a knowing and voluntary waiver of the requirement that Bruker file an adequate notice of claim within nine-months of its loss. Furthermore, there is no evidence that either Defendant ever informed Bruker that the December 8, 1994 letter constituted adequate notice, nor should Defendants actions have misled Bruker into believing that it had filed an adequate notice of claim. *See Nedlloyd,* 922 F.2d at 909 (carrier's denial of liability for claim does not excuse timely filing of adequate notice of claim). *See also L & S Bearing,* 913 F.Supp. at 1548 (carrier estopped from invoking nine-month limitation period only if carrier actually informs shipper that formal filing unnecessary); *Norton Spiel Associates, Inc. v. Carolina Freight Carriers Corp.,* No. CV 89–2317(RR), 1991 WL 318804 (E.D.N.Y.1991)(noting that Second Circuit has found that carrier's notification to shipper that claim was rejected does not excuse shipper from filing adequate claim).

Therefore, I conclude that Bruker failed to comply with the bill of lading and tariff requirement that it file a written notice of claim for a specified or determinable amount of money within nine months of the date of shipment. Since Bruker failed to file a valid claim as required by the Carmack Amendment and the related regulations, Bay State's motion for summary judgment shall be allowed.

Furthermore, Bruker seeks to amend its Complaint by adding United as a Defendant. However, since I have found that Bruker has failed to file a valid claim for damage to its spectrometer with either Bay State or United, allowing Bruker to amend its Complaint to add United as a party would be futile. Therefore, Bruker's motion to amend its Complaint is denied.

### Conclusion

1. Defendants' Motion for Summary Judgment (Docket No. 17) is *allowed;*

2. Plaintiff's Motion to Amend Complaint (Docket No. 22) is *denied;* and

3. Judgment shall enter for Bay State.