United States Court of Appeals,

Fifth Circuit.

No. 92-1934

Summary Calendar.

Richard SALZSTEIN and Candice Salzstein, Plaintiffs-Appellants,

v.

BEKINS VAN LINES INC., a Nebraska Corporation, et al., Defendants-Appellees.

June 24, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Richard and Candice Salzstein hired the Appellees, interstate motor carriers, to transport their household goods from Wisconsin to Arizona. En route, the truck carrying some of the Appellants' belongings was in an accident, and its cargo was damaged. The Appellants filed claims for their loss. When the Appellees tendered a settlement offer that was unacceptable to the Salzsteins, they sued. Claiming that the Appellants did not comply with the applicable regulations for filing claims, the Appellees moved for summary judgment, which was granted. We affirm.

I.

This litigation is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707 (Supp.1993), and Interstate Commerce Commission ("ICC") regulations, 49 C.F.R. §§ 1005.1-.7 (1992). These regulations control the processing of claims for loss or damage to property transported by common carriers, including motor carriers, subject to the Interstate Commerce Act. *Id.* at § 1005.1. Carriers may contractually limit the time for filing claims; however, this limit cannot be less than nine months. *See* 49 U.S.C. § 11707(e).

At issue is the Appellants' timely compliance *vel non* with the "Minimum Filing Requirements" set forth in 49 C.F.R. § 1005.2(b):

> A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill

of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment or shipments of property, (2) asserting the liability for alleged loss, damage, injury, or delay, and (3) *making claim for the payment of a specified or determinable amount of money,* shall be considered as sufficient compliance with the provisions for filing claims[.]

(emphasis added). It is the third requirement, that the claim must request a "specified or determinable amount of money," on which the district court based its decision. It concluded that the Appellants' failure to timely request a specified or determinable amount of money rendered their claim insufficient as a matter of law. This Circuit has not yet had occasion to interpret this provision.

## II.

After their goods were damaged, the Appellants contacted the agent who arranged the transportation.[1] The agent referred them to Bekins's Claim Services. James Whitten, the sole proprietor of Customer Claim Service, was retained by Bekins to assist in the processing of the Appellants' claim. Whitten provided the Salzsteins with Bekins's claim forms, on which they were to list the items damaged and give an approximate value for repair or replacement.

The Appellants concede that they did not fill out the forms completely; under the heading "Amount Claimed," no figures were entered. The Appellants contend, however, that Whitten informed them it was unnecessary to provide this information. The Salzsteins now argue: (1) that they reasonably relied on Whitten's statement, and because of this reliance Bekins is estopped from asserting noncompliance as a defense; (2) that Bekins is estopped from asserting noncompliance because it continued to process their claim past the nine-month deadline; (3) that Bekins waived the minimum filing requirements by virtue of Whitten's statement; and, (4) that their claim is in fact "determinable," under 49 C.F.R. § 1005.2, because Bekins partially determined, and paid, some of their claim.

## III.

Other courts have addressed whether strict compliance with the applicable filing regulations

---

[1]The Appellants arranged their move through a Graebel's agency. Graebel State Line took possession of the goods from the Salzsteins, and issued two Uniform Household Goods Bills of Lading. Bekins Van Lines was the delivering carrier.

is required. With one exception,[2] the answers uniformly have been affirmative. *See Nedlloyd Lines B.V. Corp. v. Harris Transp. Co.,* 922 F.2d 905, 908-909 (1st Cir.1991); *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 904-905 (2nd Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981); *Insurance Co. of N. Am. v. G.I. Trucking Co.,* 783 F.Supp. 1251, 1253 (N.D.Cal.1991); *Hartog Trading Corp. v. M/V PRESIDENT IBANEZ,* No. 90-2713, 1991 WL 33605, at *2 (E.D.La. Mar. 6, 1991).

With respect to whether or not a claim requests a "specified or determinable amount of money," it has likewise been consistently held that, "If damages are sought it is for the claimant to say exactly what it seeks, rather than for the carrier, against its self-interest, to say what the claimant deserves." *R.T.A. Corp. v. Consolidated Rail Corp.,* 594 F.Supp. 205, 210 (S.D.N.Y.1984); *accord Nedlloyd Lines,* 922 F.2d at 908; *G.I. Trucking Co.,* 783 F.Supp. at 1255-56; *Bobst Div. of Bobst*

---

[2]In *Wisconsin Packing Co. v. Indiana Refrigerator Lines, Inc.,* 618 F.2d 441 (7th Cir.) (en banc), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980), the Seventh Circuit held that 49 C.F.R. § 1005 did not apply where the loss claim was paid involuntarily, *i.e.* after litigation. The court concluded that where the claim is litigated, it is governed by case law developed prior to the ICC regulations. *Id.* at 445. *Cf.* 49 C.F.R. § 1005 (section heading is "PRINCIPLES AND PRACTICES FOR THE INVESTIGATION AND VOLUNTARY DISPOSITION OF LOSS AND DAMAGE CLAIMS AND PROCESSING SALVAGE").

> In the instant dispute, the parties do not contest the applicability of the ICC regulations. Nevertheless, we are persuaded by the abundant authority to the contrary that the Seventh Circuit's voluntary/involuntary distinction is inconsistent with the policy underlying the ICC regulations. *See Nedlloyd Lines B.V. Corp. v. Harris Transp. Co.,* 922 F.2d 905, 907 (1st Cir.1991); *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 904 (2nd Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981); *Insurance Co. of N. Am. v. G.I. Trucking Co.,* 783 F.Supp. 1251, 1256-57 (N.D.Cal.1991); *General Electric Co. v. Brown Transp. Corp.,* 597 F.Supp. 1258 (E.D.Va.1984); *Calpro Co. v. Consolidated Engineering Co.,* 502 F.Supp. 707, 712 (N.D.Ga.1980). The reasoning of the *Nedlloyd Lines* court cogently explains this conclusion:

>> Uniform application of the regulations to all claims protects shippers as well as carriers.... [O]nce it received an adequate notice of a claim, a carrier could choose to settle the claim voluntarily, in which case it would follow the ICC regulations concerning processing and payment.... Alternatively, by denying liability, the [carrier] could avoid the ICC procedure for responding to an adequate claim and force the shipper to file suit. Thus, limiting the applicability of the regulations to voluntarily-settled claims would permit precisely the type of discrimination among claimants that the regulations were intended to address.

> *Nedlloyd Lines,* 922 F.2d at 908.

*Champlain, Inc. v. IML-Freight, Inc.,* 566 F.Supp. 665, 669 (S.D.N.Y.1983).[3]

A. *Determinable Claim*

Citing *Bobst Div. of Bobst Champlain, Inc. v. IML-Freight, supra,* the Appellants contend that their claim was "determinable." The *Bobst Div.* court held that determinable "means an amount determinable, as a matter of mathematics, from a perusal of the documents submitted in support of the notice of claim." 566 F.Supp. at 669. The court then concluded that the shipper's letter, which estimated damage at approximately $100,000, was insufficient to state a determinable claim under 49 C.F.R. § 1005.2. *Bobst Div.,* 566 F.Supp. at 669; *see also G.I. Trucking Co.,* 783 F.Supp. at 1257 (claim for "$100,000 (estimate)" *held* not sufficiently specific under regulations).

Unlike the claimant in *Bobst Div.,* the Appellants did not tender an estimate of the amount of their claim within the specified time limit. Neither the Bekins's claims forms nor the supplemental handwritten lists indicated what amounts the Appellants were claiming for the damaged items.[4] We

---

[3]*See also* 49 C.F.R. § 1005.2(d) "Claims filed for uncertain amounts:"

> Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$100 more or less," the carrier shall ... ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. *It shall not, however, voluntarily pay such a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.*

(emphasis added).

[4]The fact that independent appraisers were able to calculate an estimated amount of loss is irrelevant. See 49 C.F.R. § 1005.2(c), which states that "standing alone," appraiser's reports do not satisfy the minimum filing requirements. Appellants argue that the appraisal reports which they submitted did not stand alone, and, when read in conjunction with the other documentation supporting their claim, provided adequate notice.

> Notwithstanding the fact that several of the appraisal reports submitted by the Appellants arrived past the nine-month limitation period, we do not think that it is consistent with the regulations to impose the duty of cross-referencing documents on the carriers' claims departments.

> By defining the responsibilities of both parties for the exchanges of information, this mechanism, when applied to all claims, encourages their voluntary resolution by ensuring that both shipper and carrier have adequate information to evaluate liability and the extent of damages.

*Nedlloyd Lines B.V. Corp. v. Harris Transp. Co.,* 922 F.2d 905, 908 (1st Cir.1991).

believe it would frustrate the regulatory purpose of encouraging voluntary settlement to permit an inadequate claim to toll the nine-month time limit on filing proper notice of loss.[5] *See Nedlloyd Lines,* 922 F.2d at 908; *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 904 (2nd Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981).

B. *Waiver and Estoppel*

The Appellants argue that Bekins waived t he minimum filing requirements by Whitten's statement that the claim forms did not have to be completely filled in. Alternatively, the Appellants rely on this statement, and on the fact that Bekins continued to process their claim past the nine-month mark, to argue that Bekins is estopped from asserting the minimum filing requirements as a defense. This reasoning is drawn from case law creating an exception to the filing requirements when (1) the shipper, despite reasonable diligence, is unable to ascertain the extent of its loss within the filing period; or, (2) the carrier's conduct misled the shipper into believing that a timely filing was unnecessary. *See Nedlloyd Lines,* 922 F.2d at 909; *Pathway Bellows, Inc.,* 630 F.2d at 905 n. 10; *Perini-North River Assocs. v. Chesapeake & O. Ry. Co.,* 562 F.2d 269, 272-74 (3rd Cir.1977).

"Although *waiver* and *estoppel* are sometimes used interchangeably, ... there is a subtle but significant legal distinction between the two." *Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991). Waiver involves the voluntary or intentional surrender of a known right. *Id.* Estoppel, on the other hand, arises when one party has reasonably relied on the conduct or statements of another; if the relying party suffers harm as a result of this reliance, the inducing party can be estopped from disavowing his earlier conduct or statement. *See Bennett v. Allstate Ins. Co.,* 950 F.2d 1102, 1107-08 (5th Cir.1992); *Pitts,* 931 F.2d at 357; *cf. Simpson v. MBank Dallas, N.A.,* 724 S.W.2d 102, 107 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) (party claiming estoppel must have used

---

[5]Likewise, we reject the argument that because Bekins determined the value for specific elements of the Appellants' total claim, the Appellees are precluded from arguing that the claim was not "determinable." Any claim is determinable in the sense that it is capable of being valued; to follow the Appellee's logic would vitiate the requirements of § 1005.2. The onus is upon the shipper to provide the carrier the amount it is claiming for its losses. *See R.T.A. Corp. v. Consolidated Rail Corp.,* 594 F.Supp. 205, 210 (S.D.N.Y.1984); *Bobst Div. of Bobst Champlain, Inc. v. IML-Freight Inc.,* 566 F.Supp. 665, 669 (S.D.N.Y.1983); *see also* discussion *supra,* at note 2.

due diligence to ascertain veracity of matter upon which he relies, and reliance must be reasonable).

We determine that neither waiver nor estoppel are appropriate given the facts of this case. In their motion to reconsider filed with the district court, the Appellants attached two letters from Bekins's Claim Services which negate both waiver and estoppel. The first is addressed to Richard Salzstein, dated May 7, 1986, and states:

> In order for us to conclude your claim, we are enclosing a copy of your claim form which we are requesting that you fill out completely. Could you please state the approximate replacement cost of the items you are claiming on your claim form. Upon receipt, we can properly conclude your claim.

R. vol. IX, at 72. The latter dispatch, dated May 23, 1986,[6] is even more to the point:

> Our tariff states that a claim must be filed for a specific and determinable amount. Since your presentation of loss and damage does not fulfill this requirement, it is necessary that we request this information from you. Please forward the amounts claimed, purchase dates and costs as soon as possible. A self-addressed envelope is enclosed for your convenience in replying.

*Id.* at 74.

Regardless whether or not their original reliance on the adjuster's statements was reasonable, we conclude that these letters made continued reliance unreasonable. The Appellants were put on notice that their claim was incomplete. Consequently, the Appellants cannot now estop Bekins from asserting the minimum filing requirements as a defense to their claim. *See Bennett,* 950 F.2d at 1108 (insurer not estopped from asserting policy's filing requirements; throughout processing of claim the insured was continually reminded that insurer was not waiving any of its rights or defenses); *American Savings v. Bell,* 562 F.Supp. 4, 9 (D.D.C.1981) (essential element of equitable estoppel is that asserting party unaware of truth of matter involved). Likewise, any waiver of compliance was vitiated by this notice to the Appellants. *See Highlands Ins. Co. v. Allstate Ins. Co.,* 688 F.2d 398, 404 (5th Cir.1982) (when facts undisputable, waiver is question of law).

IV.

---

[6]The nine-month limitation period began to run on the date Appellants received notice of damage. *See Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 901-902 (2nd Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981). The Appellants received notice on September 14, 1985. The nine-month period for filing claims ended on June 14, 1986. Consequently, even after receiving Bekins' letters in May 1986, the Appellants could have met the filing deadline.

The Appellants also urge us to reverse the district court's decision to impose costs against them. We will not disturb the assessment of costs by the district court unless there has been a showing of an abuse of this discretionary power. *See Fogleman v. Aramco,* 920 F.2d 278, 285 (5th Cir.1991). The Appellants do not point to any evidence of abuse, other than to note that they have incurred substantial costs in pursuing this litigation. We do not find that the district court erred in awarding costs to the Appellees.

The Appellees request sanctions against the Appellants for pursuing a "frivolous" appeal. *See* Fed.R.App.P. 38. We decline t o do so, as this case presents an issue which was previously undecided in this Circuit. *See* discussion *supra,* note 2.

## V.

In reviewing a grant of summary judgment, we apply the same standard used by the district court. *See Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548 (5th Cir.1989). Summary judgment is appropriate only if, when viewed in the light most favorable to the nonmoving party, the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 170 (5th Cir.1991).

## VI.

The Appellants failed to timely file a proper claim with the Appellee motor carriers; therefore, their claim is insufficient as a matter of law. There can be no showing of estoppel or waiver of the ICC's minimum filing requirement because the Appellants cannot establish all the essential elements of these principles. The judgment of the district court is, in all respects, AFFIRMED.