**David TESMER and, Linda Tesmer, Plaintiffs,**

v.

**ALLIED VAN LINES, INC. and Ehmke Movers, Inc., Defendants.**

**No. 99–1320–JTM.**

United States District Court, D. Kansas.

Jan. 12, 2000.

Loren H. Houk, Wichita, KS, for David Tesmer, Linda Tesmer.

David L. Bosman, Robert J. E. Edwards, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Allied Van Lines, Inc., Ehmke Movers Inc.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

The defendants' motion for summary judgment is currently pending before the court. The motion is fully briefed and ripe for the court's consideration. Having reviewed the parties' submissions and assessed their arguments, the court finds the defendants' motion should be denied for the reasons set forth below.

### I. Facts

On or about September 22, 1997, plaintiffs entered into an agreement with the defendants to transport their household goods from Hamilton, Ohio, to Wichita, Kansas. On or about October 1, 1997, the defendants loaded the plaintiffs' personal property. On or about October 4, 1997, the defendants delivered plaintiffs' property, but according to plaintiffs some of their property was missing. Upon delivery, the defendants issued plaintiffs a Household Goods Bill of Lading & Freight Bill ("Bill of Lading"). Plaintiff David Tesmer signed the Bill of Lading on pages 1 and 2 and initialed it on page 3.

On or about October 24, 1997, Plaintiff David Tesmer completed a "Delay Claim," seeking reimbursement for expenses the plaintiffs incurred while they waited for the remainder of their goods to arrive and

for the value of a box of collectibles that was apparently lost, destroyed or stolen in transit. The "Delay Claim" is dated "10/24/97," and Tesmer's affidavit states that he mailed the form on that date and that various employees of the defendants acknowledged receipt of the "Delay Claim" by telephone several times. The defendants argue they never received the "Delay Claim" form, and they further contend that even if they did receive it, that form was not the proper form for making a claim for lost or destroyed property.

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Claim Notification Requirements

The parties agree that, pursuant to the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706, carriers, like the defendants, may contractually limit the time within which shippers may file damage claims, provided the limit is not less than nine months. Title 49, section 14706(e)(1) of the United States Code provides:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(1).

The backside of each and every page of the Bill of Lading, which David Tesmer signed and/or initialed, contained the following language:

Contract Terms and Conditions

.        .        .        .        .

*SECTION 6.* As a condition precedent to recovery, a claim for any loss or damage, injury or delay must be filed in writing with carrier within nine (9) months after delivery to consignee as

shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such claim will not be paid.

The Interstate Commerce Commission, now the Surface Transportation Board, has promulgated regulations specifying the minimum requirements for filing a claim with a carrier:

A written or electronic communication ... from a claimant, filed with a proper carrier within the time limits specified in the bill of lading ... (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money....

49 C.F.R. § 1005.2(b). Carriers shall not voluntarily pay claims, unless a claimant makes a formal request that meets the requirements set forth above. *Id.* § 1005.2(a).

Several courts have addressed the sufficiency of notice claims filed by shippers, and a slight majority require "strict compliance with the applicable filing regulations." *Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1189–90 (5th Cir.1993) (citations omitted). The First, Second, and Fifth Circuits are among the courts that have adopted the strict compliance rule for the minimum filing requirements of 49 C.F.R. § 1005.2(b). *See Nedlloyd Lines, B.V. Corp. v. Harris Transp. Co.*, 922 F.2d 905, 908–09 (1st Cir.1991) (finding shipper's notice did not meet minimum standards set forth in § 1005.2(b) where letters identified shipment and asserted liability, but did not specify amount of damages claimed); *Pathway Bellows, Inc.*

*v. Blanchette,* 630 F.2d 900, 900–03 (2d Cir.1980) (finding that a letter was not sufficient notice because it did not affirmatively assert liability against the carrier and it failed to claim a specified or ascertained amount of damage); *Salzstein,* 993 F.2d at 1190–91 (finding that the shipper's claim failed to meet the requirement of being "determinable").

The Sixth and Ninth Circuits, however, have adopted a substantial compliance rule. *See Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 713 (6th Cir.1999) (holding that "substantial compliance with section 1005.2 suffices" and finding that the shipper substantially complied with the regulations, despite the carrier's contention that the claim form did not contain a specified or determinable amount); *Insurance Co. of N. Am. v. G.I. Trucking Co.,* 1 F.3d 903, 906–07 (9th Cir.1993) (holding that the shipper's reasonable estimate of claim amount satisfied the filing requirements). Both Circuits agree that the "purpose of the claim regulation is not to permit the carrier to escape liability but to insure that the carrier has enough information to begin processing the claim." *Trepel,* 194 F.3d at 713; *see also Insurance Co. of N. Am.,* 1 F.3d at 907 ("[T]he purpose of the written claim requirement is not to permit the carrier to escape liability, but to insure that the carrier may make a prompt and thorough investigation of the claim."). Under the substantial compliance rule, "written claims are to be construed liberally." *Insurance Co. of N. Am.,* 1 F.3d at 906. According to the Ninth Circuit, " '[t]he form of the written notice is less important than its adequacy in apprising the carrier of the basis for the claim and of the fact that reimbursement will be sought.' " *Id.* (quoting *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus,* 762 F.2d 1364, 1368 (9th Cir.1985)).

## IV. Analysis

The defendants deny liability for two independent reasons. First, they claim they never received notice of the plaintiffs'

claim. This argument involves a factual dispute that cannot be determined on summary judgment.

■ Second, the defendants claim that even if they did receive the claim, it is not the proper form for asserting a claim for lost or destroyed property, and therefore, the plaintiffs failed to file a written claim within the nine month period set forth in the Bill of Lading.

The "Delay Claim" submitted by the plaintiffs seeks reimbursement for both (1) expenses the plaintiffs incurred while they waited for some of their goods to arrive (items # 1 through # 5) and (2) the loss or destruction of a box of collectibles (item # 6). The "Delay Claim" appears to have been provided by Allied. The instructions accompanying the "Delay Claim" indicate the form is not to be used for claims for lost or destroyed goods. Delay Claim, note 8.

Without deciding whether the plaintiffs were bound by the strict compliance rule or the substantial compliance rule, the court finds that, under either rule, the notice submitted by the plaintiffs is sufficient and complies with 49 C.F.R. § 1005.2(b) and the Bill of Lading, notwithstanding the defendants' argument that the claim should not have been made on the "Delay Claim" form. The court finds that the form of the notice is less important than its adequacy in notifying the defendants of the basis for the plaintiffs' claim and the amount they seek for reimbursement. *Insurance Co. of N. Am.,* 1 F.3d at 906. The claim identifies the shipment number, the address to which it was shipped, the load date, and the delivery date, which arguably satisfies the first requirement of section 1005.2(b). By completing the form, itemizing their expenses and losses, and providing an explanation for each item, the plaintiffs have adequately asserted liability against the defendants. Finally, they made a claim for the payment of a specified amount of money, $2,099.48.

Neither § 1005.2(b) nor the defendants' Bill of Lading require separate claims to be filed for expenses incurred because of the carrier's delay versus claims for lost, destroyed or injured property. To the contrary, the defendants' Bill of Lading states: "*a* claim for any loss or damage, injury or delay must be filed in writing with carrier within nine (9) months after delivery." Bill of Lading, § 6 (emphasis added). This language suggests that claims related to a specified shipment, whether the claim is for expenses caused by the carrier's delay or for lost, destroyed or injured goods, can be filed as *one* claim, as the plaintiffs did. In addition, the regulations require "*[a]* written or electronic communication ... asserting liability for alleged loss, damage, injury, or delay." 49 C.F.R. § 1005.2(b) (emphasis added). This language likewise does not seem to require separate claims for expenses caused by delay versus claims for reimbursement due to lost, destroyed, or injured property.

■ Having determined that the claim form was sufficient notification, the question remains whether the defendants actually received the claim, a question that this court is unable to decide on summary judgment and that must be reserved for a jury to decide. Thus, the defendants' motion for summary judgment is denied.

In their response to the defendants' motion for summary judgment, the plaintiffs moved for an award of attorney's fees incurred in their response to the defendants' motion. However, plaintiffs failed to cite any authority for such an award. Certain procedural requirements must be met for the court to consider imposing sanctions under Fed.R.Civ.P. 11. *See* Fed.R.Civ.P. 11(c)(1)(A). A party seeking sanctions must submit the motion for sanctions separately from other motions or requests and specifically describe the conduct that allegedly violates Rule 11(b). *Id.* The party must serve the motion on the opposing party. *Id.* If, after 21 days, the offending party does not withdraw the challenged conduct, the party seeking sanctions may file its motion for sanctions with the court. *Id.* " 'The plain language

of the rule indicates that this notice and opportunity prior to filing is mandatory.' " *AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1529 (10th Cir.1997) (quoting *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995)). Because plaintiffs failed to comply with the procedural requirements set forth in Rule 11(c)(1)(A), the court declines to consider sanctions.

IT IS THEREFORE ORDERED this 12th day of January 2000, that the defendants' motion for summary judgment (dkt. no. 12) is denied for the reasons set forth above and the plaintiff's motion for attorney's fees (dkt. no. 18) is likewise denied.